IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DETRICK CULLUM, # M-22036,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-12-JPG |
| | ) |
| **SALVATORE GODINEZ,** | ) |
| **ZACHARY ROECHEMAN,** | ) |
| **C/O CHILDERS, THOMAS AUSTIN,** | ) |
| **SERLES, DENNIS TARR,** | ) |
| **SMITH, and DALLISA CULLINS,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Big Muddy River Correctional Center ("BMRCC"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving several concurrent 10-year sentences for aggravated criminal sexual assault and aggravated kidnapping, as well as lesser sentences for several other convictions.

Before bringing the instant suit, Plaintiff filed an earlier civil rights action which is still pending in this Court, claiming that prison officials were deliberately indifferent to his serious medical needs from an injury to his foot: *Cullum v. Provence, et al.*, Case No. 12-cv-1146-JPG-PMF (S.D. Ill., filed Nov. 2, 2012). That action shall be referred to herein as "*Cullum I*." As a result of bringing that case, Plaintiff claims that he has suffered retaliation at the hands of several of the above Defendants. In addition, he has been housed in unsanitary conditions and denied medical attention. Finally, officials have failed to respond to his grievances filed over these alleged constitutional violations.

More specifically, Plaintiff claims that beginning in March 2013, Defendants Cullins and Smith (correctional officers) conducted repeated "shakedowns" of Plaintiff's cell on six occasions (Doc. 1, p. 8).[1] He asserts the searches and related actions were taken to harass him in retaliation for filing *Cullum I*. Despite their attempts at "sabotage," Defendants found no contraband in the cell, until a search on April 26, 2013, turned up seven bowls and eleven packets of ramen noodles in the property box of Plaintiff's cellmate (Doc. 1, p. 9). Defendant Cullins issued Plaintiff a disciplinary ticket for having more than the permitted amount of these items, noting that he claimed ownership of them (Doc. 1-3, p. 7). However, Plaintiff asserts he never made this claim. These Defendants also confiscated and threw away his legal material, pens, headphones, and his own bowls and food. Defendant Cullins further retaliated by opening and reading the grievance he filed over the disciplinary charge, denying other grievances, and refusing Plaintiff permission to do laundry.

Defendant Tarr's retaliation led to more serious consequences for Plaintiff. Defendant Tarr is a friend of one of the Defendants (Browder) sued by Plaintiff in *Cullum I*. Defendant Tarr asked Plaintiff why he was suing people, and told him this "would only make it hard on [him]self" (Doc. 1, p. 10). On July 11, 2013, about two weeks after making this comment, Defendant Tarr came to Plaintiff's cell after Plaintiff complained that his cellmate had been overlooked when he should have been let out for commissary and to get ice (the temperature was over 90 degrees). They had words, culminating in Plaintiff asking for a grievance form. Soon thereafter, Defendant Tarr issued Plaintiff a disciplinary ticket, falsely claiming that Plaintiff had threatened him (and including less serious charges of insolence and disobeying a direct order) (Doc. 1-3, p. 4). Plaintiff was immediately taken to segregation, and Defendant Tarr confiscated

---

[1] Plaintiff states that C/O Sawyer also participated in one of these shakedowns (Doc. 1, p. 8), but does not include him among the named Defendants, nor does he mention him elsewhere in the complaint. Therefore, the Court concludes that Plaintiff did not intend to pursue a claim against C/O Sawyer.

his fan.  He was found guilty of these charges and punished with one month in segregation.

Plaintiff spent the first thirteen days in a segregation cell where the wall next to his bed was smeared with feces, and the toilet and floor were filthy (Doc. 1, pp. 11-12).  He asked Defendants Serles and Childers for cleaning supplies because he had nothing he could use to clean the wall, but they refused.  On or about July 26, 2013, Plaintiff was moved to a different cell, where the wall was cleaner but the toilet again was filthy and emitted a nauseating smell.  This cell was also infested with insects (silverfish) that got into Plaintiff's clothing (Doc. 1, p. 15).  The showers in the segregation wing were also unsanitary and contaminated with bloody bandages, insects, and body secretions.

Due to these conditions, Plaintiff contracted painful boils or warts on his genital area and buttocks, which eventually began to bleed and discharge pus.  He asked Defendants Serles and Childers to help him get medical attention.  They responded by telling him to put in a written request, but refused to give him the forms to do so.

In addition to complaining about the conditions and his medical needs to Defendants Childers and Serles (to no avail), Plaintiff spoke personally with Defendant Austin (assistant warden) when he visited the segregation wing (Doc. 1, p.14).  When Plaintiff told him about the feces-smeared wall, Defendant Austin told Plaintiff he would get him some cleaning supplies, but these never came.  Defendant Austin repeated the other Defendants' advice to submit a medical request for his warts/boils.  When Plaintiff finally obtained request slips and submitted a request to the health care unit, he never got a response.  *Id*.

Plaintiff invokes 730 Illinois Compiled Statutes 125/18 to claim that Defendants Austin and Roecheman (Warden of BMRCC) failed in their duty to maintain the "jail" in a clean and healthful condition (Doc. 1, pp. 16, 18).  Further, Defendants Roecheman and Godinez (Director

of the Illinois Department of Corrections) refuse to enforce the "broken" prison grievance process (Doc. 1, p. 18; Doc. 1-1, p. 1). As a result, Plaintiff was often unable to obtain grievance forms, and rarely received any response when he did file grievances. He seeks injunctive relief to correct the deficiencies in the grievance procedures, as well as damages for the constitutional violations he describes.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:** Retaliation claim against Defendants Cullins and Smith, for targeting Plaintiff's cell for shakedowns; issuing the April 26, 2013, false disciplinary report; destroying Plaintiff's property; interfering with his grievances; and denying laundry privileges;

**Count 2:** Retaliation claim against Defendant Tarr, for issuing a fabricated disciplinary report on July 11, 2013, resulting in Plaintiff being placed in segregation;

**Count 3:** Eighth Amendment claim against Defendants Serles, Childers, and Austin, for failing to remedy the unsanitary conditions in Plaintiff's segregation cells;

**Count 4:** Eighth Amendment deliberate indifference to medical needs claim against Defendants Serles and Childers, for refusing to help Plaintiff get medical care for his boils/warts.

However, Plaintiff's allegations against Defendants Austin and Roecheman for failing to maintain healthy conditions in compliance with an Illinois statute **(Count 5)**, and his claim that the prison grievance system does not function properly **(Count 6)** fail to state a claim upon

which relief may be granted, and shall be dismissed for the following reasons.

**<u>Dismissal of Count 5 – Violation of 730 ILL. COMP. STAT. 125/18</u>**

The statute relied upon by Plaintiff is a section of the Illinois County Jail Act.  730 ILL. COMP. STAT. 125/0.01 *et seq*.  As such, it is inapplicable to the state prison where Plaintiff's claims arose.  Even if this or another Illinois statute were relevant to the maintenance of sanitary conditions in BMRCC, however, an alleged violation of such a state statute does not give rise to a claim under the Constitution.  A federal court does not enforce state law or regulations. *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989).

Plaintiff's claim that he was held under conditions amounting to cruel and unusual punishment under the Eighth Amendment shall receive further review in Count 3 above.  Count 5 against Defendants Austin and Roecheman shall be dismissed with prejudice.

**<u>Dismissal of Count 6 – Failure to Enforce Grievance Procedure</u>**

Plaintiff complains that Defendants Roecheman and Godinez fail to enforce the prison grievance procedures which require officials to respond to inmates' grievances.  Often, grievance forms are not available to him or other prisoners.  He asserts that when he has filed grievances, they are only "rarely" answered, and he has never received a response to any appeals he has filed when a grievance was denied (Doc. 1, p. 18).  As a result, it is "impossible" to exhaust administrative remedies before filing a civil rights claim in court.  *Id*.  Further, the "broken" grievance process fails to function as it should to provide an opportunity for prisoners to redress their complaints without the need for litigation.

These facts, taken as true, do not support an independent constitutional claim.  It is well established that "a state's inmate grievance procedures do not give rise to a liberty interest

protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow (or to ensure that subordinate employees follow) their own grievance procedures does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

As he correctly points out, Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process, and the actions or inactions of prison officials who allegedly stymied his attempts to exhaust, may be relevant in the event that a Defendant raises a challenge to Plaintiff's right to maintain a § 1983 suit over the substantive matters raised in the grievances. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).  Should such a challenge be filed, Plaintiff shall have the opportunity to respond at the proper time.  However, the alleged failure to provide Plaintiff with a working grievance procedure does not violate any constitutional right.  Therefore, Count 6 shall be dismissed with prejudice.  Likewise, Defendants Roecheman and Godinez shall be dismissed from the action.

**<u>Disposition</u>**

**COUNTS 5** and **6** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  Defendants **GODINEZ** and **ROECHEMAN** are **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for Defendants **CHILDERS, AUSTIN, SERLES, TARR, SMITH,** and **CULLINS**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and

return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 29, 2014**

                                            *s/ J. Phil Gilbert*
                                            United States District Judge